## RUTH C. HALE *et al.*

### *v.*

## EZEKIEL J. M. HALE *et al.*

*Filed at Ottawa June 16, 1888.*

1. WILL—*power in executors to sell and convey property given in trust—by implication.* Authority in executors to sell and convey property devised to them in trust, may arise by implication, as, where duties are imposed upon the trustee by the will or instrument creating the trust, which he can not perform without making a sale, the law will imply the necessary power to prevent a failure of the purpose of the trust. The law will not permit a trust to fail because it may be inartificially declared or expressed.

2. SAME—*direction for investment—whether power of sale to be implied—a devise construed.* A testator, after making certain specific devises and legacies, directed that the residue and remainder of his estate, both real and personal, be and remain in the care and control of his executors and trustees, "well and safely invested, until the decease of the last survivor of the life annuitants" named in his will, when the residue, with the accumulated interest thereon, should be divided, etc.: *Held,* that the direction to keep the property "well and safely invested," gave no power, by implication, to the executors, to sell the same, but meant that the property was to remain invested as it was at the time the will took effect.

3. To sustain the doctrine of equitable conversion by executors, the provisions of the will must be so clearly written as to leave no doubt of the intention of the testator to have his real estate converted into personalty.

4. SAME—*residuary clause—what will pass thereby.* A testator domiciled in Massachusetts, owning a large estate in that State, and lands in New York and in this State, after making various life bequests and legacies, by his will provided that the residue and remainder of his estate, not therein otherwise disposed of, should be and remain in the care and control of his executors and trustees, and their successors, well and safely invested, until the decease of the last survivor of the life annuitants named, when such residue should be equally divided between his grandchildren, *per stirpes,* etc.: *Held,* that the residuary clause of the will was broad enough to include all the property of the testator, no matter where situated, and was a valid disposition under the laws of this State.

5. SAME—*perpetuity defined—whether a devise is within the rule.* A perpetuity in this State is defined to be a limitation, taking the subject thereof out of commerce for a longer period of time than a life or lives in being, and twenty-one years beyond. A will postponing the final disposition of a part of an estate until after the death of certain life annuitants, which may not occur for forty or even sixty years, is not invalid, as contravening any rule of public policy existing in this State.

APPEAL from the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Mr. RUFUS C. HALL, for the appellants:

The courts are averse to adopting any construction of wills which will result in partial intestacy. Redfield on Wills,— quoted in *Fox* v. *Rumery,* 68 Me. 124.

The will does not contravene the law of this State against perpetuities. *Waldo* v. *Cummings,* 45 Ill. 426; *Lunt* v. *Lunt,* 108 id. 307; *Rhoads* v. *Rhoads,* 43 id. 252.

The time for which the executors are to hold the residue, in which the real estate in question is involved, is carefully limited to the decease of the last survivor of the life annuitants, and was doubtless drawn with reference to the law governing perpetuities, which is the same in Massachusetts as in Illinois. *Nightingale* v. *Warrell,* 15 Pick. 111; *Brattle Square Church* v. *Grant,* 5 Gray, 142.

Any words which show an intention to create a power of sale, or any form of instrument which imposes duties upon a trustee which he can not perform without a sale, will necessarily create a power of sale. *Cherry* v. *Greene,* 115 Ill. 596; *Going* v. *Emery,* 16 Pick. 112; *Fox* v. *Rumery,* 68 Me. 125; *Wood* v. *White,* 4 M. & C. 481; Hill on Trustees, 471.

The direction to keep the property "well and safely invested," carries a power of sale and conversion. Redfield on Wills, 435; *Dawes* v. *Swan,* 4 Mass. 215; *Byrnes* v. *Baer,* 86 N. Y. 211; *Belcher* v. *Belcher,* 38 N. J. Eq. 127; *Mower* v. *Orr,* 7 Hare, 473.

The testator clearly intended to mingle the real and personal property, and make a common fund for distribution. *Winston* v. *Jones,* 6 Ala. 556; *Snell* v. *Snell,* 38 N. J. Eq. 123; *Burrill* v. *Boskerfield,* 11 Beav. 535; *Vaughn* v. *Freeman,* 90 N. C. 610; Perry on Trusts, (3d ed.) sec. 511.

Mr. JOHN WOODBRIDGE, for the appellees :

The will contains inherent evidence that it was intended to apply to the Massachusetts estate only. *Ennis* v. *Smith,* 14 How. 421.

In case of doubtful construction, the court should favor the heir.   1 Redfield on Wills, 434, 435 ; *White* v. *Page,* 10 Wheat. 213.

If there be two possible constructions of the twenty-second clause, one of which will make the provision valid and the other will make it void, it is the duty of the court to adopt the first.   Coke on Littleton, 42, 183 ; *Church Warden case,* 10 Coke, 67 b ; *Archibald* v. *Thomas,* 3 Cow. 284 ; *Many* v. *Iron Co.* 9 Paige, 188 ; *Robert* v. *Corning,* 89 N. Y. 287 ; *Downing* v. *Marshall,* 23 id. 366 ; *Post* v. *Hover,* 33 id. 593.

The clause is void for remoteness.   *Sears* v. *Russell,* 8 Gray, 99 ; *Hobson* v. *Hale,* 95 N. Y. 589 ; 2 Jarman on Wills, 301-703.

A construction that will postpone the alienation of this property for more than fifty years is opposed to public policy.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case is for partition of the real estate of which Ezekiel J. M. Hale died seized, and which is situated in the county of Cook, in this State, and was brought by one of the heirs, in the Superior Court, against the widow, the executors, and the other heirs of decedent.

Concerning the facts out of which the litigation arises, no controversy exists.   Prior to his death, the common ancestor of the heirs claiming his estate in Cook county as intestate property, resided at Haverhill, in the State of Massachusetts. At the time of his death he owned a large estate in Massachusetts, consisting of both real and personal property, all of which it is conceded was disposed of by his will, which was,

after his death, admitted to probate in that State, and which
is conceded by all parties interested to be valid under the laws
of Massachusetts.   The testator also left a large amount of
property situated in the State of New York, and the property
involved in this litigation, in Illinois.   The larger portion of
the estate seems to have been in Massachusetts, where the
testator. had resided, and where his will was admitted to pro-
bate.   It seems the testator gave various legacies and devises,
and provided in different clauses of his will for life annuities
to a number of persons,—perhaps twelve in all,—and for other
annuities, payable at stated periods, until the final division of
the residue of his property under the provisions of his will.
It is understood, and perhaps admitted, that there is sufficient
estate in Massachusetts out of which to pay all legacies, de-
vises and annuities provided for or declared in the will.   It is
not claimed that any of the property belonging to the estate
situated either in New York or this State will be wanted for the
payment of either legacies, devises or annuities under the will.

The bill in this case alleges the will of Ezekiel J. M. Hale,
deceased, was admitted to probate in Massachusetts, where
he died, no one objecting, which is an admission it was valid,
and disposed of all the property belonging to the estate in that
State.   But the bill is framed on the theory it was not the in-
tention of the testator to devise the real estate now sought to
be partitioned,—that the scheme of his will was not adapted
to the condition of his estate in New York and in Illinois,
and was not intended to convey the same; that by the laws of
Illinois and New York the devise was void, and had been so
declared by the courts of the latter State; that such testator
well knew that the provisions of his will, if applied to his real
estate in New York and Illinois, made the same illegal and void
on account of the statutes of such States prohibiting perpetui-
ties; that if the provisions of the will should be applied to the
lands in Illinois or New York, the same could not be alienated
for many years, and not until after the death of twelve life

annuitants; that the property in Illinois is unproductive, and can not be made productive; that the taxation upon it is large, and that the interest and taxation will entirely absorb the value of said real estate, so as to render it a total loss to the heirs if it should be held to be included within the terms of the will, and hence not subject to division except in accordance with the will. It is alleged the property situated in New York belonging to the estate exceeds in value $1,000,000, and that in Illinois is now estimated to be of the value of $200,000. The executors answered the bill, as they were required to do, in which they admitted most, if not all, of the formal charges in the bill, but insisted the lands sought to be partitioned passed to them under the residuary clause of the will of the testator, and on filing their answer they filed a cross-bill, in which they claimed to have the power, under the will, to sell such real estate, and ask the court to so decree. The respondents, in their cross-bill, make the same allegation as is contained in the original bill,—that unless the property described in the bill can be sold, it will be absorbed by taxes and assessments, and other expenses, before the time for distribution would arrive under the provisions of the will. The Superior Court, at the hearing of the cause, dismissed the cross-bill of respondents, and found that the property described in the original bill was intestate property, and decreed a partition of the same, as it was asked to do. That decision is assigned for error.

The residuary clause of the will out of which all the questions made on this record arise, is as follows:

"*Twenty-second*—As to the residue and remainder of all my estate, both real and personal, not herein otherwise disposed of, it is my will that the same be and remain in the care and control of my said executrix and executors and trustees, and their successors, well and safely invested, until the decease of the last survivor of the life annuitants named in my foregoing will, and that then the said residue and remainder, with all the accumulated interest thereof, shall be divided equally among

my grandchildren, *per stirpes,* to hold to such grandchildren so distributed, and to their heirs, executors, administrators and assigns forever."

Most of the other clauses of the will contain provisions for legacies, bequests, devises and annuities to certain persons, and others contain specific directions as to what disposition shall be made of certain property, and beyond giving an outline of the general scope of the will, and the intention of the testator as to the management of his estate by his executors and trustees, they contain nothing that is important in connection with the present discussion, and their contents need not be stated other than in a general way.

Two principal questions are made by the original and crossbills: First, whether the lands involved were devised by this clause of the will, or whether the same can be treated as intestate property, as not being embraced in the will; and second, if it shall be held the lands were devised, is any power given the executors and trustees, either expressly or by implication, by this or any other clause of the will, to sell these lands at any time within their discretion. It will be found most convenient to consider these questions in the inverse order in which they are stated, which will be done briefly.

There is and can be no pretense, any express power is given to the executors and trustees to sell any real estate situated in New York or in Illinois, that had belonged to the testator, by the twenty-second clause, or any other clause of his will; and if any such power exists in them, it must arise by implication, from powers conferred or duties expressly imposed by the will in regard to such real estate. Power is expressly conferred upon the executors and trustees to sell certain real property, as in the second clause of the will, but nothing is said anywhere in the will concerning the sale of real property in New York or Illinois. It is not even mentioned by any description, by location, or otherwise. It will be seen hereafter, if the Illinois property is devised at all, it is by the

twenty-second or residuary clause of the will, and not otherwise. But does the twenty-second paragraph of the will confer any power upon the executors and trustees to sell real estate situated in New York or Illinois, even by implication? It is thought it does not. There can be no doubt of the correctness of the rule stated by counsel, that authority to sell and convey trust property may be conferred by implication, as, for instance, where duties are imposed by the instrument creating the trust, upon the trustee, which he can not perform without making a sale, the law will imply the necessary power, otherwise there would be a failure of the objects of the trust. A most common example is where there has been an assignment for the payment of debts. If no express power is given to sell the trust property, the duties to be performed by the trustees will necessarily create the power of sale, for it is obvious, in no other way could the trustee perform the duties required of him by the instrument creating the trust. The law will not permit a trust to fail because it may be inartificially declared or expressed. This is undoubtedly as liberal a statement of the implied powers of trustees as the law will sanction.

Applying this rule, neither the twenty-second clause, nor, indeed, any other provision, contains anything that indicates, by implication or otherwise, it was the intention of the testator that his executors and trustees should have power to sell and convey any of his real property, either in New York or Illinois, for the purpose of converting it into personalty. The words supposed to manifest the intention of the testator in this regard are, "that the same be and *remain* in the care and control of my said executrix and executors and trustees, and their successors, well and safely *invested,* until the decease of the last survivor of the life annuitants named in the foregoing will." It is said the words "well and safely" mean that the testator gives the executors and trustees the usual authority to make prudent investments, and that they mean they must keep the property invested. The vice of the argument on this branch

of the case lies in detaching these words from their place' in the will, and giving to them a meaning inconsistent with the context. What is the direction given by the testator concerning this property in New York and Illinois? It is, that it "remain in the care and control" of the executors and trustees, "well and safely invested,"—that is, it is to "remain," as now, "well and safely invested." Any other would be a strained and unnatural construction of the words of the will. So far from indicating any intention on the part of the testator that his executors and trustees should sell his lands, either in New York or Illinois, the words used indicate unmistakably it was his intention and purpose they should "remain" in the care and control of his executors and trustees, "well and safely invested," as they then were, until the time appointed for the distribution of the residue of his estate, both real and personal, should arrive. The principle running through all the cases on this subject, so far as the writer has been able to examine the same, is, the provisions of the will must be so clearly written as to leave no doubt of the intention of the testator to have his real estate converted into personal estate, to sustain the doctrine of what is called equitable conversion. That intent does not appear from any language used by the testator in this case, and it is not perceived his trustees have any implied power to change the real property devised, into personal estate, for reinvestment or otherwise.

This precise question was presented to the Court of Appeals of the State of New York by the same parties to this litigation, and in an action brought by these executors and trustees to obtain a construction of certain provisions of the last will and testament of Ezekiel J. M. Hale, deceased, that court held, after most elaborate argument, the will, while valid under the laws of Massachusetts, where the testator died, and where his will was admitted to probate, contained no express direction for the conversion of the real estate into personalty, or for the sale of the real estate. (*Hobson et al. v. Hale et al.* 95 N. Y.

588.)    This court is entirely satisfied with the conclusion reached by the Court of Appeals in that case, and the elaborate discussion there given to the exact question involved in the case now being considered, would seem to relieve this court from the necessity of any extended consideration of the question.    Under this view of the meaning of the will, the relief demanded by the cross-bill,—that the right of complainants in that bill to sell and convey the lands involved, and to convert the same into money, may be established and declared,— was properly denied.

The remaining question arises on the original bill, and is, whether the lands situated in Illinois, and which belonged to the estate of the testator, were devised by the residuary clause of the will, or whether the same can be treated as intestate property, as not being embraced in the will.    There is evidence tending to show what the court found by its decree,—that the testator bought these lands in Cook county for speculation, and that, had he lived, it is probable he would have sold the same on receiving the first favorable offer.    That he gave expression to such views is proved past all doubt, but whether he changed his mind in that regard before his death, of course can not be known.    Construing the will in the light of the surrounding circumstances, as the law requires shall be done, does it show the testator intended to omit these lands from the operation of his will?    It is seen, the residuary clause of the will is as broad and comprehensive as it can well be expressed. It is:  "As to the residue of all my estate, both real and personal, not herein otherwise disposed of."    Primarily, the words, "all of my estate," mean all the estate of the testator, wherever situated; and that meaning will always be given to them, unless something in the context will show a more restricted construction will better comport with the clear intention of the testator.    It will be noticed, the real estate of the testator situated in New York, if devised at all, was devised by this same clause of the will.    There is no other clause of the will

that can have the slightest application to it. If the lands in Illinois shall be held not to have been devised by the twenty-second clause of the will, the conclusion would necessarily be, the New York lands were not within its operation. No one has ventured to suggest the testator did not intend by this clause of his will to devise his property in New York. When the case was before the Court of Appeals of New York, that court seems to have held, without much discussion, the property in that State was devised by the will, for it was said: "While it should not be overlooked that the testator was domiciled in the State of Massachusetts, and his will was executed there, it should also be borne in mind that by his will he devised his real estate, as real estate, situated in the State of New York." The same words in the will that are held to constitute a devise of lands in New York, include also the lands in Illinois. Either the lands in both States are devised, or they must be treated as intestate property in both States. It is incredible that a testator making a will that by its terms, when understood in their primary sense, disposes of all "his estate, both real and personal," omitted therefrom property conceded to be of the value of over $1,200,000. Such a proposition is too improbable to be adopted, unless the testator was incapable of comprehending what he was doing. Plainly, the residuary clause of the will is broad enough to include all the property of the testator, no matter where situated, and there is nothing in either of the attendant circumstances, or in any other clause of the will, that shows any intention on the part of the testator to omit any property in Illinois, or elsewhere, from its operation.

When this case was before the Court of Appeals of New York, it was held that clause of the twenty-second paragraph of the will that postponed the final division of the estate until the death of the last survivor of the life annuitants, so far as it applied to real estate in that State, worked an unlawful suppression of the powers of alienation, and was, for that rea-

son, void. And it was also held, such clause was repugnant to the provisions of the statute of that State prohibiting accumulations, except for the times and purposes therein permitted. No such objection lies to that provision of the will in this State. A perpetuity in this State is defined to be a limitation taking the subject thereof out of commerce for a longer period of time than a life or lives in being, and twenty-one years beyond. Here the right of alienation is not suspended for any period beyond the lives of certain persons in being, and hence this provision of the will is not repugnant to any rule of law in this State inhibiting perpetuities.

But it is said a construction that would postpone the alienation of this property for more than fifty years is opposed to public policy. The limitation fixed is to terminate at the death of certain life annuitants, and, of course, when that contingency will happen is a matter of the merest conjecture. It might occur within five, ten, twenty, forty or sixty years. Of course the time is indefinite, and all that can be known concerning it, with any degree of certitude, is, that it is sure to happen, sooner or later. The time for which the executors and trustees are to hold the residue of the estate, for which there might be a suspension of the right of alienation of the property in controversy, is limited to the death of the last survivor of the life annuitants, and it is not perceived in that respect it contravenes any public policy existing in this State.

The decree of the Superior Court dismissing the cross-bill will be affirmed, and the decree granting the relief demanded on the original bill will be reversed, and the cause will be remanded, with direction to that court to dismiss the original bill also.

*Decree reversed in part and in part affirmed.*

Mr. Justice Magruder: I do not concur.