George M. Smith et al., Defendants in Error, v. Elmer Christopher et al. Louie Lauridsen, Plaintiff in Error.

Gen. No. 8,536.

24

Heard in this court at the May term, 1932. Opinion filed October 18, 1932.

CLARK, YOUNG & BULL, for plaintiff in error.

CLYDE H. THOMPSON, for defendants in error.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

The only question presented to this court is, Did Sine Lauridsen, daughter of the testator, Jacob M. Smith, during her lifetime take a vested interest in the land and estate of the testator, or in the proceeds thereof? If she did, it is not questioned that her interest therein passed by her last will and testament to her husband, Louie Lauridsen.

The testator's will was probated in the county court of Livingston county. His widow, Mary Smith, was appointed executrix thereof, and acted as such until her death on the 16th day of November, 1923. Charles L. Romberger, whom the will nominated as executor after the death of the widow, predeceased her. After the death of the widow, a bill was filed in the circuit court of said county, by Sine Lauridsen and other parties interested, requesting that the court appoint Carl Christopher as successor in trust and prayed for an order authorizing and empowering him to sell a farm of which the testator died seized. This farm was disposed of by the seventh clause of the testator's will and is a residuary clause making disposition of all of the testator's real estate.

The circuit court appointed Carl Christopher as successor in trust and ordered him to proceed to execute the power of sale given by the will to Charles L. Romberger, and that said Carl Christopher be vested with all the powers said will vested in Charles L. Romberger. This order was entered on April 5, 1924.

The new trustee thus appointed did not sell the real estate of the testator as directed by that order of the court. On March 17, 1931, the circuit court rendered an order on the petition of the guardian of the minor children of Albert J. Smith, a deceased brother of Sine Lauridsen, requiring the trustee to sell the farm. On July 17, 1931, the trustee filed his final report showing that he had sold the farm on the 4th day of May, 1931; that he proposed to pay the share of Sine Lauridsen to her five children. Louie Lauridsen was permitted by the court to file objections to this report on his showing that Sine Lauridsen died on the 9th day of August, 1927, and by her last will and testament bequeathed and devised all her personal and real estate to said Louie Lauridsen, her husband, absolutely and in fee simple.

The causes of objection of Louie Lauridsen to the report were stated to be: That the trustee proposes to divide the share which Sine Lauridsen would have received, if living, among the five children of Sine Lauridsen; that the five shares proposed to be distributed to the five children of Sine Lauridsen should be given to the objector by reason that he is "the sole legatee under the last will and testament of Sine Lauridsen, deceased." The court overruled the objections of Louie Lauridsen to the report and ordered and directed the trustee to pay her children the share which Sine Lauridsen, if living, would have received from the proceeds of the sale of the farm. Louie Lauridsen appears here as a plaintiff in error.

The debts of the testator, Jacob M. Smith, together with the costs of administering his estate, have been fully paid. The last will and testament of Sine Lauridsen has been admitted to probate in the county court of Livingston county.

The will of Jacob M. Smith bequeathed all his personal property to his widow absolutely. To George M. Smith and Albert J. Smith, two of his sons, he bequeathed $500 each, which was to be paid to them by the executor of his will within six months after testator's death. All his real estate was devised to the widow during her lifetime.

The seventh clause of the will is as follows: "After the death of my said wife, Mary Smith, I hereby give, devise and bequeath all the rest, residue and remainder of my real property wherever situated unto my said sons, George M. Smith and Albert J. Smith, and my daughters, Sine Lauridsen, of the Township of Dwight, Mata J. Swanson, of the Village of Dwight, Annie G. Smith and Emma C. Smith, both of the Township of Union, all in the County of Livingston and State of Illinois, to be divided in equal parts among them, share and share alike, and in case either of my said

sons or daughters should not be living at the time said property is ready for distribution by my executor hereinafter appointed, then I give, devise and bequeath the respective share of such deceased son or daughter to his or her children, to be distributed in equal parts, the child or children of any deceased son or daughter to take the share said son or daughter would have received if living, and if either of my said sons or daughters shall die without issue and before they have received their respective share from my said executor, all my residuary estate shall be divided between the survivors equally share and share alike, or go to the survivor, as the case may be.''

The ninth clause is as follows: ''I hereby give to my executor hereinafter appointed, after the death of my said wife, full power and authority to sell and convey in fee simple absolute or otherwise in his discretion all or any portion of my real estate and to execute and deliver all proper deeds and instruments in writing, the same as though I was still living.''

The tenth clause appointed the widow executrix and by its second paragraph provided as follows: ''After the death of my said wife, I hereby constitute and appoint Charles L. Romberger, of the Village of Dwight, County of Livingston and State of Illinois, my executor of this my last will and testament.''

In his will by the first part of clause seven the testator made a devise of his real estate in equal parts after the death of the widow to his sons and daughters definitely named in the clause, among whom was Sine Lauridsen. Unless the subsequent terms of the will have the effect of modifying or reducing this devise, then clearly such children of the testator took a vested remainder in the real estate upon the death of the testator. However, this conclusion must be based on the determination that the real estate mentioned in clause seven has remained real estate for the purpose

of succession and has not been converted into personal property under the doctrine of equitable conversion. It must first be determined if the will shows a clear intent on the part of the testator that the realty should be converted into personalty for the purpose of distribution under the terms of the will.

"The question on whether real estate is to be converted into personal property and distributed as such is to be determined from the intention of the testator. But such intention must clearly appear." *Poulter v. Poulter,* 193 Ill. 641.

The fact that the legal title to the real estate and the beneficial interest in the proceeds of the sale of such real estate passed to the same persons by the terms of the will would not of itself prevent a conversion. *Wayne v. Fouts,* 108 Tenn. 145, 65 S. W. 471. Such persons hold only the naked title to the real estate, and that in trust for the purpose of carrying out the provisions of the will. *Baker v. Copenbarger,* 15 Ill. 103. The direction in a will to sell the real estate of the testator to work an equitable conversion must be clear and imperative. A mere power of sale, or a discretionary power of sale given to the executor is not deemed imperative in the absence of other provisions of the will so clearly written as to leave no doubt of the intention of the testator to have his real estate converted into personal property. *Young v. Sinsabaugh,* 342 Ill. 82; *Hale v. Hale,* 125 Ill. 399. Also that the sale of the land was to be postponed until after the death of the life tenant has no effect itself to prevent a conversion as of the time of the death of the testator. *Lash v. Lash,* 209 Ill. 595.

As above stated, the intention of the testator is to be ascertained from his will. Pursuing this thought further, we quote from the case of *Young v. Sinsabaugh, supra:* "An express declaration in the instrument that the land shall be treated as money, although

not sold, or that the money shall be treated as land, although not actually laid out in the purchase of it, is not essential. The direction to convert may arise by necessary implication from the nature of the instrument or the language employed. There must, however, be an expression, in some form, of an absolute intention that the land shall be sold and turned into money, or that the money shall be expended in the purchase of land.''

The ninth clause of the will gave the executor full power and authority to sell all or any portion of the testator's real estate. Construing the clause literally, the executor is also given power, at his discretion, to convey all or any portion of such real estate in fee simple absolute, or otherwise. ''In order to work a conversion while the property remains unchanged in form, there must be a clear and imperative direction to convert it.'' *Young v. Sinsabaugh, supra.* We do not think this clause of the will is in the legal sense an imperative direction to sell the real estate of the testator and convert into money. *Young v. Sinsabaugh, supra.*

In the seventh clause the real estate of the testator was to be ''divided'' among his children named therein share and share alike; and should any of them be not living at the time said ''property'' is ready for ''distribution,'' then the share of a deceased child was to be ''distributed'' in equal parts; . . . and if any child dies without issue and before receiving its share from the executor, then all the residuary estate of the testator to be ''divided'' among the survivors, or go to the survivor. The words ''divide'' and ''distribute'' may be used in speaking of the division of real estate. They do not of themselves indicate an intention on the part of the testator to bring about a conversion, absolutely and in all events. If it is doubtful whether the testator intended a conversion, the original char-

acter of the property will be retained. *Young v. Sinsabaugh, supra; Poulter v. Poulter, supra.*

As the words divide and distribute may be used in reference to the division of both real and personal property, we do not feel warranted in saying that the testator by the use of those words clearly shows an intention to convert his real estate, in the absence of other provisions of his will throwing further light on the use of those words. And this is true although the real estate is not susceptible of division among the beneficiaries as directed in the will. *Poulter v. Poulter, supra; Gammon v. Gammon,* 153 Ill. 41.

The will does not in express terms bequeath specific legacies to the children of the testator mentioned in the seventh clause; nor were there express terms of the will that bequeathed the proceeds from the sale of the real estate to such children. The nature of the instrument, or the language employed therein, is not such that it is necessary to state and examine all the criteria which the authorities furnish on the question of conversion. It is sufficient to state that the provisions of the will of Jacob M. Smith are not so clearly written as to leave no doubt of his intention to have his real estate mentioned in clause seven of his will converted into personal property.

In the case of *Starr v. Willoughby,* 218 Ill. 485, the will in question was similar to the one before us and the court in discussing that case say: "The first clause of paragraph 3 provides, as soon as practicable after the death of William E. Willoughby the real estate in question shall be sold by his executors and the proceeds thereof disposed in the following manner: The sum of $1,500 was to be invested in a home for Mrs. Jane Willoughby, and the balance was to be divided among such of his children 'as may be living at that time, and surviving descendants of children, in case any of my children may have died leaving children

or descendants of children then surviving and living at that time.' It is clear the words, 'living at that time' refer to the time of sale and not to the time of the death of the testator. While it is true that the law favors the vesting of estates, still where it is clear, from a reading of the entire will, that the testator intended to postpone the vesting of an estate until the period of distribution has arrived, that intention will be carried out. *Johnson v. Askey*, 190 Ill. 58.'' This case has been cited with approval in the case of *Heitzig v. Goetten*, 347 Ill. 619.

In construing wills the intention of the testator must be ascertained from a construction of the whole will in the light of the facts and circumstances surrounding him, and his family, and the intention sought is not what by inference may be presumed to have been in the mind of the testator, but that which he has expressed by the words of his will. It is our opinion that the testator in directing how his property should be divided among his children and grandchildren used the language "to be divided in equal parts among them share and share alike, and in case either of my sons or daughters should not be living at the time said property is ready for distribution by my executor hereinafter appointed, then I give, devise and bequeath the respective share of such deceased son or daughter to his or her children, to be distributed in equal parts, the child or children of any deceased son or daughter to take the share said son or daughter would have received, if living, etc.'' The time for the division of the estate has reference to the time of the sale of the property and not to the time of the death of the testator.

In our judgment it was clearly the intention of the testator that when his wife died his children should take his estate, and in the event if any of his children died, then, in that event the child's share should go to

the heirs of his body and the grandchildren of the testator, and this construction given to the two clauses of the will is in accord with the intent of the testator as we view it. To hold otherwise would be to defeat the intentions of the testator.

The judgment of the circuit court of Livingston county should be affirmed.

*Affirmed.*