(No. 46215.-

ESTHER KELLER, Appellant, v. GEORGE W. SCHOBERT *et al.*, Appellees.

*Opinion filed September 27, 1974.*

RYAN, J., took no part.

Warren, Hayner & Baxter, of Ottawa (Harland D. Warren, of counsel), for appellant.

Langer & Langer, and Wolslegel & Armstrong, both of Ottawa (H. Robert Langer and John M. Wolslegel, of counsel), for appellee George E. Schobert.

Robert E. White, of Ottawa, for appellee Ralph Schobert.

Peter F. Ferracuti Associates, Ltd., of Ottawa (Peter F. Ferracuti, of counsel), for appellees Edna Walter, Helen Schobert, and Wilford Schobert a/k/a Frank W. Schobert.

Berry & O'Conor, of Ottawa (Andrew J. O'Conor, of counsel), for appellee First National Bank of Ottawa.

MR. JUSTICE DAVIS delivered the opinion of the court:

The plaintiff, Esther Keller, brought this action in the circuit court of La Salle County to partition certain real estate which her mother, Louise Schobert, owned at the time of her death. The defendants are the brothers and sisters of the plaintiff; one brother, George Schobert, also is named a party defendant in his capacity as executor of the will of Louise Schobert, deceased. The trial court dismissed the complaint for partition upon the motion of the defendants, and the Appellate Court for the Third District affirmed. (13 Ill. App. 3d 637.) We allowed the plaintiff's petition for leave to appeal.

Louise Schobert died February 12, 1970, owning

certain real estate. On March 5, 1970, her son, George Schobert, was appointed executor of the estate. On September 25, 1972, and on October 7, 1972, George Schobert, the executor, entered into separate agreements for deed whereby he agreed to sell certain premises theretofore owned by Louise Schobert; the executor's sons were the purchasers under one contract for 76.38 acres of land at $610 per acre, and two sons of defendant Edna Walter (a daughter of the decedent) were the purchasers under another contract for 100 acres of land at $610 per acre, and $6800 for the improvements thereon. The executor alleges that the sale price for said land was based on the assessed value of the property for Federal estate taxes. At the time these agreements were executed, the Federal estate tax proceedings had not been completed and that tax, as well as the Illinois inheritance tax, was unliquidated.

The plaintiff filed a partition suit in September 1972, contending that she is entitled to seek partition in that she has an interest in the real estate under the will of her mother. The defendants contend that under the will there was a conversion of the real property, and the plaintiff had no legal interest in the real estate sufficient to seek a partition. The plaintiff contends: (1) that there was no conversion under the will, and (2) in the alternative, that if there was a conversion, there was then an equitable reconversion due to the lapse of time.

The relevant portions of the will state the following:

"CLAUSE 2: My Executor, hereinafter named, is hereby authorized and directed to reduce all of my estate into cash as soon after my death as may be conveniently done and distribute the net proceeds of such sale or sales as is hereinafter set forth.

CLAUSE 3: Although I have authorized and directed my executor to reduce my estate to cash he is hereby advised and directed to abide by the options which I do hereby grant unto my son, George W. Schobert, and my daughter, Helen Schobert, which options are as follows: ***

CLAUSE 4: In the event, that the option to purchase any real estate is not exercised, within the time prescribed, then such real estate, together with any and all other real estate of which I die possessed, shall be sold by my executor, either at public or private sale, without order of court and at such time or times and upon such terms and conditions as he may deem to be for the best interest of my estate.

CLAUSE 5: When my estate has been reduced to cash, my executor. is hereby authorized and directed to make distribution of the net proceeds then remaining, after the payment of all my debts and costs and expenses of administration, in the manner following: ***." (Then follows a provision for the distribution of 1/6 of the proceeds of such sale to each of the children.)

Clause 7 of the will then sets forth a standard form of powers and discretions which are given to the executor, including, "*** to distribute the residue of my estate in cash or in kind or partly in each ***."

Clause 8 then refers to the powers given to a trustee, there being a trust for a portion of the proceeds to be distributed to the one son. Among the powers given the trustee is the power "To retain any property transferred to the trustee" and the power "To sell at public or private sale *** any real or personal property of the trust."

In clause 3 of the will, there is a description of the property that the son is granted an option to buy, and of the property that the daughter is granted an option to buy, plus further terms of the option, including the limitation that the named children must exercise the option within 6 months from the date of the death of the testatrix.

The real property included in the options, which options ran to the son and daughter of the decedent, was not included in the partition suit, although as of September 15, 1972, the date when the complaint for partition was filed, this property had not been sold.

On October 20, 1972, the executor filed his account and report covering his acts from the date of his appointment to June 30, 1972. This was after the partition

suit had been filed. The plaintiff filed objections thereto and the court, after hearing and arguments of counsel, found said report to be true and correct and that it should be approved, with one minor exception. The court further found that no costs or attorney's fees should be assessed against said estate on behalf of Esther Keller, plaintiff in the partition suit, and the court entered an order which approved and confirmed such report. No appeal was taken from this order.

Equitable conversion stems from the maxim that equity regards that as done which ought to be done. It is "the treating of land as personalty and personalty as land under certain circumstances." (*Shay v. Penrose* (1962), 25 Ill.2d 447, 449.) For there to be an equitable conversion of realty under the terms of a will, the will must contain a definite expression and direction, showing a definite intention, that the land be sold and turned into money, and that the proceeds then be distributed to the beneficiaries. If the executor, or other fiduciary charged, is given a choice, option or discretion whether the property be sold, then equitable conversion does not occur because there rests upon the fiduciary no duty to sell the land. *Rehbein v. Norene* (1954), 2 Ill.2d 363, 370-371; *Brandt v. Phipps* (1947), 398 Ill. 296, 309.

The effect to be given the language used in this will is somewhat dependent on whether it is precatory or dispositive. This is answered by determining whether the testator meant by such words to control the disposition of property. If so, it is the testator's will no matter how mildly the wish is expressed. (*Keiser v. Jensen* (1940), 373 Ill. 184, 187.) As has been stated numerous times, the testator's will or intention, and whether or not there is a conversion, is to be determined from a consideration of the entire last will. *Jusko v. Grigas* (1962), 26 Ill.2d 92, 98-99; *Watkins v. Nobiling* (1961), 22 Ill.2d 290, 292; *Vierieg v. Krehmke* (1920), 293 Ill. 265, 269.

Louise Schobert clearly expressed in her last will the

intent that her real estate should be converted into cash and such proceeds then be distributed by the executor to the beneficiaries under her will. Clause 2 specifically directed her executor to reduce the estate to cash. Clause 3 recognized this direction and its mandate that the real estate be so converted by excepting the two parcels of real estate insofar as the options were concerned. Clause 4 reaffirms that if the options were not exercised in the prescribed manner, then the real estate subject to such options, together with all other real estate owned by her at her death, was to be sold by the executor.

The decedent, in clause 3 of her will, prescribed that the options granted therein were to be exercised within 6 months from the date of her death. However, in clause 2 of her will, she provided that her executor should reduce all her estate into cash "as soon after my death as may be conveniently done and distribute the net proceeds of such sale or sales as is hereinafter set forth."

In the case at bar, the decedent gave positive directions to her executor to sell her real estate, but she did not put a definite time limit within which the sale or sales should be made. We can fairly presume that the decedent knew that the farm land was the principal asset of her estate and that it was not as readily marketable as certain other assets might be. Thus, she made a flexible time limit for its sale—"as soon after my death as may be conveniently done ***."

Finally, in clause 5, the executor was authorized to make distribution only after the entire estate had been reduced to cash. She could not more clearly have expressed her mandate that the real estate be sold by her executor. The will effected an equitable conversion, and the conversion took place upon the death of the testator, and the gifts to the children were bequests of money. Therefore, under the doctrine of equitable conversion, the plaintiff's interest under the will was at most personal property; she had no interest in the land sufficient to

maintain a suit for partition. *Brown v. Lochridge* (1957), 10 Ill.2d 254, 259; *Parish v. Parish* (1963), 29 Ill.2d 141, 148; *Buckner v. Carr* (1922), 302 Ill. 378, 384-385.

The plaintiff contends that the executor here had no more than a mere power of sale, without an explicit and imperative direction for its exercise. (See *Rehbein v. Norene* (1954), 2 Ill.2d 363; *Vierieg v. Krehmke* (1920), 293 Ill. 265.) Considering the will in its entirety, we conclude that the plaintiff's contention in this respect is unwarranted. She points out that clause 7 of the will gives the executor the power and discretion to distribute the residue in both cash and in kind. However, clause 7 is nothing more than a standard form of powers and discretions given to the executor. This clause must be read in light of the other specific directions for the sale of the real estate and its conversion into cash. Likewise, the plaintiff urges that clause 8, which refers to the power of the trustee to retain any property transferred to it, including real estate, suggests there was no mandatory direction to the executor to sell real estate. Again, clause 8 is a standard form of powers given to the trustee of a trust created under the will. This too must be read in light of the other specific provisions contained in other clauses in the will and does not negate a mandate to the executor to sell the real estate.

The plaintiff urges that if there was an equitable conversion of the real estate, there was then a reconversion by reason of the failure of the executor to sell the property within 2½ years after his appointment. Clause 2 of the decedent's will directed the executor to reduce the real estate into cash as soon after the decedent's death as may conveniently be done. Thus, the will recognized that some amount of time might be required in connection with the administration of the estate and the payment of estate and inheritance taxes. The question before us is whether a sale of the land 2½ years after the decedent's death was as soon after the decedent's death as could

conveniently be done. At the time of the sale, the estate taxes were still unliquidated. Under these circumstances, we believe that the sale was made as soon after the decedent's death as could conveniently be done. The cases cited by the plaintiff are not in fact cases involving reconversion. In those cases the court found only a power in the executor to sell, and not an explicit and positive direction. These cases hold that if the executor does not exercise this bare power within a reasonable time, or within the limits of time prescribed in the will, such power lapses, and there may then be a right to partition. (*E.g.,* *Rehbein v. Norene* (1954), 2 Ill.2d 363, 372; *Brandt v. Phipps* (1947), 398 Ill. 296, 311; *Vierieg v. Krehmke* (1920), 293 Ill. 265, 270; *Pope v. Kitchell* (1933), 354 Ill. 248, 256.) In *Lockner v. VanBebber* (1936), 364 Ill. 636, the court found that the language of the will was in fact a direction to convey. However, the will directed that the property be conveyed within one year, which it was not. The court found that the mandate given to the executor was not carried out as directed, and a decree for partition therein was affirmed.

The effect of a conversion can be reversed and the property restored in equity to its original estate if all of the beneficiaries are legally competent and concur. (*Bergman v. Rhodes* (1929), 334 Ill. 137, 142.) That was not the circumstance in the case at bar. When a testatrix has clearly evidenced in her will that the real estate be sold and the beneficiaries take only the proceeds thereof, that intent should not be lightly frustrated by the application of a doctrine of equitable reconversion. We do not believe that the lapse of 2½ years prior to any action toward the sale of the real estate is sufficient, in itself, to work a doctrine of reconversion of the property. If the executor has not carried out his fiduciary duties, there are remedies available to the plaintiff. These remedies do not, however, under the record before us, include the right to a partition of the real property. Accordingly, the judgment of the

Appellate Court for the Third District, affirming the judgment of the circuit court of La Salle County, is affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.